UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mike Tedeschi, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Diageo North America, Inc.,<br><br>Defendant | 1:21-cv-04940<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Diageo North America, Inc. ("defendant") manufactures, imports, markets, labels and sells Ron Zacapa 23 Centenario Rum ("Product") from Guatemala, which is marketed in a way that causes consumers to expect that it is aged for twenty-three (23) years.

2. Rum is a distilled spirit made from mature sugar cane.

3. The past decade has seen the emergence of a market for "super-premium" rums, in a similar way which occurred for other spirits like vodka, whiskey, bourbon, and tequila.

4. Many factors affect the quality and consumer acceptance of rum, perhaps none more significant than its maturity.

5. When first distilled, rum lacks a complex flavor and golden amber color.

6. Most premium rums are aged since this mellows and improves its taste.

7. Rum is typically aged in barrels previously used for whiskey or bourbon, and highly charred new barrels.

8. The aging process causes the rum to develop a natural amber color from absorbing natural tannins in the wood.

9. The alcohol in the rum brings out the esters from the barrels, which result in an infusion of spiciness and oak tones, which become more pronounced with age.

10. Because the amount of time a rum is aged impacts its quality, there is a strong interest in consumers in the age of product.

11. Statements of age are required to be based on the age of the youngest spirit, even when the final product has been blended with older spirits.

12. Regulations define "Age" as "the period during which, after distillation and before bottling, distilled spirits have been stored in oak containers."

13. Though rum is not required to state its age, if it does, it is required to be truthful and not misleading.

14. The age of rum "may be understated but shall not be overstated." 27 C.F.R. § 5.40(e)(1).

15. Federal regulations require that "If age is stated, it shall be substantially as follows: '__ years old'; the blank to be filled in with the age of the youngest distilled spirits in the product." *See* 27 CFR § 5.40(b).

16. Consumers have come to expect that prominent numbers on the front labels of spirits refers to the age of the youngest spirit used.

17. The Product's representations include "Ron Zacapa Centenario," "23 – Sistema Solera," "Solera Gran Reserva," and "From Virgin Sugar Cane Aged at a High Altitude in Oak Barrels."



18. The back of the Product contains more information on "23" and "Sistema Solera."

[Image of back label of Zacapa 23 rum bottle, reading:]

ZACAPA 23
THE BALANCE OF BOUQUET AND UNIQUE FLAVORS IS DERIVED FROM A BLEND OF AGED RUMS BETWEEN 6 AND 23 YEARS OLD, ORIGINATING FROM THE "SISTEMA SOLERA" AGING PROCESS. THESE MATURE RUMS HAVE BEEN PRODUCED ONLY FROM THE SWEETEST FIRST-CRUSH VIRGIN SUGAR CANE. RON ZACAPA 23 IS MATURED AT AN ALTITUDE OF 2300 METERS IN SELECTED BARRELS THAT PREVIOUSLY AGED ROBUST AMERICAN WHISKEYS, DELICATE SHERRIES AND FINE PEDRO XIMÉNEZ WINES.

SISTEMA SOLERA
A TRADITIONAL, DYNAMIC AGING PROCESS IN WHICH RUMS OF DIFFERENT AGES AND PERSONALITIES ARE BLENDED, THEN SUBSEQUENTLY STORED IN SELECTED BARRELS TO CONTINUE THE MATURING PROCESS. THIS PROCESS IS GUIDED AND REPEATED UNDER THE CRITICAL EYE OF THE MASTER BLENDER UNTIL REACHING THE MATURITY AND COMPLEXITY OF AROMAS AND FLAVORS THAT SHAPE THIS UNIQUE PREMIUM RUM.

WWW.ZACAPARUM.COM

DRINK RESPONSIBLY
DRINKiQ.COM          PLEASE RECYCLE          SOLERA GRAN RESERVA  RON DE GUATEMALA

PRODUCT OF GUATEMALA, CENTRAL AMERICA, PRODUCED BY AÑEJOS DE ALTURA, S.A. KM 16.5, CARRETERA ROOSEVELT, ZONA 1, MIXCO, GUATEMALA, UNDER LICENSE OF RUM CREATION & PRODUCTS, INC.
IMPORTED BY: THE RON ZACAPA CO, NORWALK, CT         40% Alc/Vol. 750 ml

GOVERNMENT WARNING:
(1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.
ZACAPA CENTENARIO, ZACAPA CENTENARIO LOGO AND ZACAPA CENTENARIO BOTTLE ARE TRADEMARKS OF RUM CREATION & PRODUCTS, INC.

IA-5¢   ME,VT-15¢

19. Only in the fine print does the Product disclose that it is "derived from a blend of aged rums of between 6 and 23 years old, originating from the 'Sistema Solera' aging process." The balance of bouquet and unique flavors is derived from a ==blend of aged rums of between 6 and 23 years old==, originating from the =="Sistema Solera" aging process==. These mature rums have been produced only from the sweetest first-crush virgin sugar cane honey. Ron Zacapa 23 is matured at an altitude of 2300 meters in selected barrels that previously aged robust Bourbons, delicate Sherries and fine Pedro Ximénez wines.

ZACAPA 23
THE BALANCE OF BOUQUET AND UNIQUE FLAVORS IS DERIVED FROM A BLEND OF AGED RUMS BETWEEN 6 AND 23 YEARS OLD, ORIGINATING FROM THE "SISTEMA SOLERA" AGING PROCESS. THESE MATURE RUMS HAVE BEEN PRODUCED ONLY FROM THE SWEETEST FIRST-CRUSH VIRGIN SUGAR CANE. RON ZACAPA 23 IS MATURED AT AN ALTITUDE OF 2300 METERS IN SELECTED BARRELS THAT PREVIOUSLY AGED ROBUST AMERICAN WHISKEYS, DELICATE SHERRIES AND FINE PEDRO XIMÉNEZ WINES.

20. The Product's blending of rums of different ages without disclosing this on the front label is misleading to consumers.

4

21. According to industry observers, most of the rum in the Product is closer to 6 years than 23.

22. However, the Product's description of its "Sistema Solera" is inconsistent with how this method is generally understood.

23. The term "solera" originates from the region of Andalusia, Spain, known as the "Sherry Triangle."

24. Solera is a "process for aging liquids such as wine, beer, vinegar, and brandy, by fractional blending in such a way that the finished product is a mixture of ages, with the average age gradually increasing as the process continues over many years."[1]

25. The "bottom cask is known as the *solera*, meaning 'soil,' as it rests closest to the ground. All of the casks above it are known as *criaderas* ('cradles'). By convention, the set of all barrels (all of the *criaderas* and the *solera* casks) is known as a solera system."[2]

26. The liquids produced through a solera system are more consistent than in barrel aging, because "any differences in the character of the wine or individual casks average out over the system."

27. In a traditional aging system, each batch has a unique character from its barrels.

28. Solera aging was not traditionally applied to rums, because producers recognized the importance of aging in the traditional way, so the rums would have attributes and qualities from the casks.

29. Ed Hamilton, a rum importer and author on rum, stated that he had "visited nearly every distillery exporting rum to the U.S. today and ha[s] yet to see one 'true' solera system."

---

[1] Wikipedia contributors, "Solera," Wikipedia, The Free Encyclopedia.
[2] Matt Pietrek, Has "Solera" Become a Dirty Word in Rum? As the premium rum market faces closer scrutiny, enthusiasts are beginning to question the practice of "solera aging," PunchDrunk.com, Dec. 6, 2017

30. Instead, Hamilton observed "dynamic blending arrangements," which is consistent with how the Product's back label describes the solera system utilized.

A traditional dynamic aging process in which rums of different ages and personalities are blended, then subsequently stored in selected barrels to continue the maturing process. This process is guided and repeated under the critical eye of the Master Blender until reaching the maturity and complexity of aromas and flavors that shape this unique premium rum.

**SISTEMA SOLERA**
A TRADITIONAL, DYNAMIC AGING PROCESS IN WHICH RUMS OF DIFFERENT AGES AND PERSONALITIES ARE BLENDED, THEN SUBSEQUENTLY STORED IN SELECTED BARRELS TO CONTINUE THE MATURING PROCESS. THIS PROCESS IS GUIDED AND REPEATED UNDER THE CRITICAL EYE OF THE MASTER BLENDER UNTIL REACHING THE MATURITY AND COMPLEXITY OF AROMAS AND FLAVORS THAT SHAPE THIS UNIQUE PREMIUM RUM.

31. Instead of following traditional solera methods, Defendant's master blender states:

> We age our rum using a unique process, which is an adaptation of a Spanish sherry maturing process. This enables rums of varying ages and personalities to be carefully blended and matured in a series of casks previously used to store American whiskeys, delicate sherries and Pedro Ximénez wines.
>
> Differing from the sherry solera system, the barrels are changed every time a new mixture is realized, which gives an extraordinary depth of flavor.[3]

32. This process "differs substantially from traditional sherry solera techniques," because there is "no intermingling of rums from prior batches in each cask, and no criaderas holding spirit with different average ages. In addition, by swapping in new barrels, the extraction of each barrel's previous contents is maximized. By contrast, sherry soleras use the same barrels for decades, and their neutrality is key."

33. One industry executive – whose company produces a solera rum, noted that "the solera method ignores the subtleties and nuances of individual barrels."

---

[3] Pietrek, *supra*.

6

34. A prominent advocate for the rum industry, Richard Seale, of Foursquare Rum Distillery, criticized "solera" age statements, stating that "Putting an isolated number on the label, which is then universally mistaken for a legitimate age claim, is a despicable, deceptive practice and should be condemned."

35. Use of the large font "23" coupled with the other statements, gives consumers a misleading impression as to the age of the Product.[4]

36. Though the Product does not explicitly say "23 years old," a reasonable consumer will expect that all the contents are aged this long.

37. Many third-party retailers advertise the Product as "23 years old," through their websites and in their retail stores.

38. Defendant can correct these third-party representations but does not.

39. The statement of "23" does not technically qualify as a "statement of age" because it does not comply with 27 C.F.R. § 5.40(b) and specifically state "23 years old."

40. The representation of "23 – Sistema Solera" is a statement that, "irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression." 27 C.F.R. § 5.42(a)(1).

41. In addition to U.S. regulations which require age statements to refer to the youngest rum used, the preeminent trade group of rum producing nations – the West Indies Rum and Spirits Producers' Association Inc. ("WIRSPA") – has the same requirements:

> Any statement regarding the age of an Authentic Caribbean Rum will therefore refer solely to the age of the youngest rum in the blend….For example, a bottle of Authentic Caribbean Rum with '8 years old' written on the label may well contain a proportion of rum which is much older, but none will have been matured for a moment less than eight years.[5]

---

[4] Rum's misleading age statements and other lies
[5] Ageing Rum, WIRSPA.

42. The Product contains other representations which are false and misleading.

43. Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product, relative to itself and other comparable products.

44. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

45. Defendant sold more of the Product and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

46. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

47. The Product is sold for a price premium compared to other similar products, no less than $44.99 for 750 mL, higher than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

48. This Court has jurisdiction over defendant because it is a New Jersey corporation with a principal place of business in New York County, and transacts to supply, and supplies, goods and/or services in New York.

49. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

50. Diversity exists because Plaintiff and Defendant are citizens of different states.

51. Upon information and belief, the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

52. Plaintiff Mike Tedeschi is a citizen of Illinois.

53. Defendant Diageo North America, Inc. is a Connecticut corporation with a principal place of business in New York, New York County, New York.

54. Venue is proper because defendant resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## Parties

55. Plaintiff Mike Tedeschi is a citizen of Lockport, Will County, Illinois.

56. Defendant Diageo North America, Inc., is a Connecticut corporation with a principal place of business in New York, New York, New York County.

57. Defendant is the subsidiary of British-based spirits conglomerate Diageo plc, the second-largest spirits company in the world.

58. Defendant is one of the premier importers of high-value spirits in the United States.

59. Defendant's business in New York is larger than in most other states.

60. Defendant had control or could exercise control over the statements on the Product's label and the ability to modify the labeling or not accept the Product from any other company involved with the production of the Product.

61. Plaintiff bought the Product at or exceeding the above-referenced price, on one or more occasions at one or more locations, including Binny's Beverage Depot – Mokena, 21410 Wolf Rd, Mokena, IL 60448, between April and September 2020, among other times.

62. Plaintiff bought the Product because he wanted to consume and use an aged rum of the age indicated on defendant's labeling and relied upon defendant's representations and the impression they conveyed as to the Product's age.

63. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

64. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations about its age and qualities are consistent with its representations.

## Class Allegations

65. The class will consist of all purchasers of the Product who reside in Illinois during the applicable statutes of limitations.

66. The class will consist of all Illinois residents who purchased the Product at any store within Illinois or ordered it for delivery into Illinois, during the statutes of limitations.

67. Notice is feasible for reasons including, upon information and belief, defendant's possession of knowledge of where the purchasers of the Product are located and can obtain more detailed information about the purchasers of the Product through the third-party retailers it provides the Product to.

68. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

69. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

70. Plaintiff is an adequate representative because his interests do not conflict with other members.

71. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

72. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

73. Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

74. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>
("ICFA"), 815 ILCS 505/1, et seq.</u>

(Consumer Protection Statute)

75. Plaintiff incorporates by reference all preceding paragraphs.

76. Plaintiff and class members desired to purchase a product which was aged in the number of years indicated by the number on the Product and understood it to refer to a statement of age, even if it did not explicitly state this.

77. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

78. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

79. Plaintiff relied on the representations.

80. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,<br>
Implied Warranty of Merchantability and<br>
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

81. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that the number on the front label referred to the Product's age.

82. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

83. This duty is based on Defendant's outsized role in the market for this type of Product.

84. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

85. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and in legal proceedings.

86. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

87. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

88. Defendant had a duty to truthfully represent the Product, which it breached.

89. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area – a trusted seller and importer of high-value spirits.

90. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

91. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

92. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

93. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that the number on the front label referred to the Product's age

94. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its composition and qualities.

## Unjust Enrichment

95. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 3, 2021

                                                            Respectfully submitted,

                                                            Sheehan & Associates, P.C.
                                                            /s/Spencer Sheehan

60 Cuttermill Rd Ste 409<br>
Great Neck NY 11021-3104<br>
Tel: (516) 268-7080<br>
Fax: (516) 234-7800<br>
spencer@spencersheehan.com